136 N.J. Super. 596 (1975)
347 A.2d 383
STATE OF NEW JERSEY, PLAINTIFF,
v.
RUBIN CARTER AND JOHN ARTIS, DEFENDANTS.
Superior Court of New Jersey, Passaic County Court, Law Division (Criminal).
February 11, 1975.
*599 Mr. John P. Goceljak, Assistant Prosecutor of Passaic County, argued for plaintiff (Mr. Joseph D.J. Gourley, Prosecutor of Passaic County, attorney).
Mr. Myron Beldock of the New York bar argued for defendant Rubin Carter (Messrs. Busch & Busch, attorneys).
Mr. Lewis M. Steel of the New York bar argued for defendant John Artis (Mr. Jeffrey E. Fogel, attorney).
LARNER, A.J.S.C.
Defendants made a motion for a new trial based on various grounds which were argued and heard at an evidentiary hearing over a period of six days and which culminated in an opinion adverse to the defendants filed by the court on December 10, 1974, reported in 136 N.J. Super. 271 (1975).
Thereupon defendants discharged their counsel and retained New York counsel who saw fit to move for reargument and the reopening of the hearing instead of seeking review through the appellate process. This motion was accompanied by voluminous affidavits and briefs, as well as many collateral motions, all of which were heard by the *600 court on January 30, 1975. On that date the court heard oral argument for many hours, deciding the collateral motions on the record and reserving decision on the major application to reconsider and reopen the evidentiary hearing. The motion to reargue was heard in the form of reargument on the merits of the application. At the same time counsel presented oral argument on the facets of another motion for a new trial which they represented was to be filed that day. This written notice and accompanying affidavit were in fact filed on January 30, 1975, immediately after the completion of oral argument. Subsequently the court advised counsel that no further oral argument was warranted and that this additional move would be decided with the other applications on the basis of the papers and the oral presentation of January 30.

I
The motion for reargument and reconsideration consists of an attack upon the validity and propriety of the rationale and conclusions made by the court in its opinion of December 10, 1974. A review and analysis of current counsel's contentions leads to the conclusion that there is no substantial reason for the court to reverse its determination denying a new trial.
It should be noted that the mere fact that new counsel have been substituted, that they may seek to present different or more cogent arguments, or that they find words, phrases or reasoning in the court's opinion to be unpalatable, does not suffice to entitle them to a new hearing or a new trial. Defendants were given full latitude and opportunity to present all relevant factual data and all facets of legal argument at the evidentiary hearing. They were represented by four competent and experienced counsel, who fought vigorously on their behalf. The court made a painstaking review of the trial evidence, as well as the evidence and contentions advanced at the new trial hearing, and reached conclusions that it felt and still feels are fully warranted.
*601 Simply because defendants or their counsel in retrospect and after the court's opinion and determination believe that it might have been better to ask more or different questions, submit more cogent arguments or produce more witnesses does not constitute a valid basis for rehearing. There must be finality to judicial proceedings. Litigants cannot be permitted to play games with the court through piecemeal or repetitive presentation of applications for relief. All available evidence and arguments must be presented at a trial or hearing, and the judicial decision thereon becomes final. The avenue of relief thereafter is by way of appellate review.
It is far from uncommon for an able and experienced lawyer, after losing a case, to conjure up second thoughts about questions which should or should not have been asked of a key witness or about witnesses whom he should have called to the stand. Nevertheless it would be improper for him to seek a new trial or a new hearing on this ground, because of the basic principle of jurisprudence dictating the necessity for finality of judicial judgments. This principle is no different because a new lawyer with another viewpoint enters the litigation. He is bound by the process which preceded him and cannot be permitted to start the entire process over again.

II
One of the grounds advanced by defendants to reopen the hearing is the submission of affidavits of six witnesses relating to their contacts with Bello and Bradley before they executed their recanting affidavits in support of the initial application for a new trial. It is urged that these witnesses would bolster the credibility of Bello and Bradley because of extra-judicial recantations by the latter communicated to the affiants prior to the new trial application. These affiants include Hector Martinez, who was a witness at the trial and testified before the jury substantially along the lines outlined in his affidavit.
*602 Clearly these witnesses were known and available at the time of the evidentiary hearing, so that their testimony does not fall into the category of newly discovered evidence. If it was the judgment of prior counsel not to call them, the present judgment of new counsel to the contrary does not warrant the reopening of the hearing. What has been stated above as to the finality of judgments is equally applicable to this ground for rehearing.
Furthermore, the substance of the affidavits would not outweigh the overwhelming demonstration of the lack of credibility of the recantations in the evidence produced at the new trial hearing. Even if these proposed witnesses were offered, the court's ultimate conclusion would be the same.

III
Defendants by way of another motion for new trial have taken a new tack by urging that certain investigative materials in possession of the police and county detectives were exculpatory in nature and withheld from defendants at trial. This contention relates to a tape of an interview between Lt. DeSimone and Bello on October 11, 1966, Lt. DeSimone's notes of interviews with Bello June 18 and 20, 1966, and Detective Mohl's notes of October 17, 1966.
The contention relating to the tape was considered by the court in connection with the initial new trial hearing and held to be without merit in the filed opinion. The tape per se does not constitute material evidence going to the issue of guilt or innocence. See Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). As pointed out earlier, it was but a potential tool in a lawyer's arsenal for cross-examination of a witness  a tool which had questionable value for trial purposes because of the substantial inculpatory evidence contained therein.
The DeSimone notes are in the same category. They are not substantive evidence which could be admitted at trial or which could have had any impact upon the issue of guilt. *603 They were merely the rough notes of the detective dealing with his early investigative efforts in connection with his interviews with Bello, and reflect the early hesitancy of Bello to identify defendants. This failure (or refusal) of Bello to identify Carter or Artis on the day of the murder was codified in Bello's early statement to the police which was in fact utilized by the defense at trial and considered by the jury in evaluating the credibility of Bello's trial identification.
In any event, the police investigative file was not discoverable under the applicable rules at the time of this litigation, and was never specifically requested by the defense. As aptly stated by the United States Supreme Court in Moore, supra:
* * * We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. [408 U.S. at 795, 92 S.Ct. at 2568, 33 L.Ed.2d at 713]
See also, United States v. Miller, 499 F.2d 736 (10 Cir.1974).
The Mohl report of October 17, 1966 is also not exculpatory evidence favorable to the defense which would be material to guilt. Counsel make much of the fact that the report contains one word in connection with the police interview of Bradley and Bello on August 4, 1966, namely, "confrontation." It is assumed by defendants' present counsel that this word in the report necessarily means that both witnesses talked to each other and concocted a common story, or that there was implanted in each mind the fact description submitted by the other. There is no evidence whatever supporting such an assumption. Yet such is the reach of the minds of counsel seeking a strand upon which to bottom a constitutional argument. This effort is without substance in fact or law and must be rejected.

IV
Another phase of the latest new trial motion is the suggestion that there is more newly discovered evidence warranting *604 a new trial. Some of this argument relates to a rehashing of the same issues asserted in another form in the proliferation of motions addressed to the court. This requires no further discussion.
In counsel's hearsay affidavit there is also a reference to the allegation that the bullet and shell found in the Carter car were "vouchered" with the police property clerk on June 22, 1966 instead of June 17, 1966, as testified by Detective DiRobbio. Even if this were established properly as a fact instead of as an attorney's allegation, it would not suffice as newly discovered evidence to warrant a new trial. It is manifestly not "newly discovered" because it could have been discovered by investigation and subpoena at the time of trial; and secondly, it could have little or no impact upon the ultimate jury verdict since it merely proves that the witness may have been mistaken as to the time that he turned over the evidence to the property clerk. Other sinister inferences are clearly unsupported and unwarranted.

V
As a final thrust at the end of the recent argument of January 30, defense counsel asserted incompetence of prior counsel as a lack of due process justifying a rehearing. This is but a thrust born in a vacuum, without any basis for its assertion. As already noted, defendants were represented by four competent attorneys, including the Public Advocate, who have as much experience and skill as those who vilify them. And they exercised their knowledge and skill in the presentation of their clients' cause in the best traditions of the profession.
Lawyering involves not only the exercise of skill and diligence but also the need to make delicate decisions of judgment. The judgments of lawyers in the presentation of a case may differ from one individual to another, and there is no objective standard from which one can determine that a lawyer's judgment decision is right or wrong. Hindsight by *605 a client or a substituted attorney may suggest a different judgment which he believes should have been made. But this is a far cry from a charge of incompetence which has as its synonyms "unqualified", "inadequate" and "unfit."
A failure of competent counsel in a criminal case to present certain evidence or to advance certain contentions, whether such nonaction represents an error of judgment or mere inadvertence, does not constitute denial of due process of law, even though such failure result in a conviction which perhaps might have been avoided. The constitutional requirement is satisfied when the defendant has had the benefit of the advice and guidance of a reputable and competent attorney.
Assigned attorney is only one of the actors in the trial of a criminal cause. The best of counsel makes mistakes. Unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds to vitiate the trial. Dissatisfaction with the result obtained through the efforts of a prisoner's assigned or personal attorney is insufficient to invoke the protection of the constitutional requirement. [State v. Bentley, 46 N.J. Super. 193, 203 (App. Div. 1957).]
To the same effect, see State v. Buffa, 65 N.J. Super. 421, 425 (App. Div. 1961); State v. Dennis, 43 N.J. 418, 428 (1964); State v. Yormark, 117 N.J. Super. 315, 341 (App. Div. 1971).
This contention is completely devoid of support and fails to encompass facts which demonstrate incompetence of counsel in the constitutional sense as delineated by the reported cases on the subject.

VI
All motions for reconsideration and rehearing are therefore denied.